IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN EDELMAN,<br>C. BRADFORD JEFFRIES, Trustee of<br>the C. Bradford Jeffries Living Trust, and<br>WILL FURMAN, Trustee of the Furman-<br>Doane Family Revocable Trust,<br><br>          Plaintiffs,<br><br>vs.<br><br>BELSHEIM & BRUCKERT, LLC,<br>BELCO TITLE & ESCROW, LLC,<br>and ATTORNEYS' TITLE<br>GUARANTY FUND, INC.,<br><br>          Defendants. | Case No. 11-cv-1121-MJR-PMF |

## MEMORANDUM AND ORDER

REAGAN, District Judge:

    A.    Introduction

Filed in this United States District Court, the above-captioned case involves a series of transactions, agreements, documents, and communications relating to the financing for Phase II of a multi-use real estate development called Forest Lakes. Stripped to its essentials, three Plaintiffs (one individual and two trusts, through their trustees) bring claims of negligent misrepresentation and breach of fiduciary duty against a law firm, a title company, and an underwriter.[1]

---

[1] The three Plaintiffs are (1) Steven **Edelman**, (2) C. Bradford **Jeffries**, as Trustee of the C. Bradford Jeffries Living Trust dated September 19, 1994, and (3) Will **Furman**, as Trustee of the Furman-Doane Family Revocable Trust. The three Defendants are (1) Belsheim & Bruckert, LLC (the law firm, "**Belsheim/Bruckert**"), (2) **Belco** Title & Escrow, LLC, and (3) Attorneys' Title Guaranty Fund, Inc. (**ATG**). Where convenient in this Order, the Court refers to the parties by their names as highlighted in this footnote.

The gist of the January 26, 2012 Second Amended Complaint (complaint) is that Plaintiffs collectively loaned three million dollars to a non-party, Caseyville Sport Choice, LLC, in reliance on representations that the loan was secured by a first lien mortgage on a parcel of real property.  Several years later, Plaintiffs discovered that their mortgage on the property was in fact subordinate to a $20,000,000 prior mortgage in favor of another entity (Meridian Bank).  Meridian Bank foreclosed on the property, and Plaintiffs lost their entire investment.

Plaintiffs sue to recoup their pecuniary losses plus interest, attorney's fees and costs.  So, for instance, Plaintiff Edelman sues Belsheim/Bruckert for the $1,000,000 he allegedly lost as a proximate result of Belsheim/Bruckert negligently providing information on which Edelman relied in investing in Phase II of Forest Lakes; Jeffries sues Belsheim/Bruckert to recover $1,400,000 he lost in this transaction; and Furman sues Belsheim/Bruckert to recover $600,000 he lost in this transaction.

More specifically, the claims in the complaint are:

Count 1 -- Negligent Misrepresentation (Edelman v. Belsheim/Bruckert);
Count 2 – Negligent Misrepresentation (Jeffries v. Belsheim/Bruckert);
Count 3 – Negligent Misrepresentation (Furman v. Belsheim/Bruckert);

Count 4 – Breach of Fiduciary Duty (Edelman v. Belco);
Count 5 – Breach of Fiduciary Duty (Jeffries v. Belco);
Count 6 – Breach of Fiduciary Duty (Furman v. Belco);

Count 7 – Breach of Fiduciary Duty (Edelman v. ATG);
Count 8 – Breach of Fiduciary Duty (Jeffries v. ATG); and
Count 9 – Breach of Fiduciary Duty (Furman v. ATG).

Defendant Belco answered the complaint (Doc. 37).  Defendant ATG moved to dismiss Counts 7, 8, and 9.  That motion has been fully briefed (Docs. 27, 39, 42).  Defendant Belsheim/Bruckert moved to dismiss Counts 1, 2, and 3.  That motion

became ripe when the May 3, 2012 reply deadline elapsed (Docs. 35, 36, 38, 45). Enjoying subject matter via the federal diversity statute, 28 U.S.C. 1332, the Court now rules on ATG's dismissal motion.[2]

B. <u>Applicable Legal Standards</u>

Attorneys' Title Guaranty Fund, Inc. (ATG) seeks dismissal of the three breach of fiduciary claims against ATG (Counts 7, 8, and 9) under Federal Rule of Civil Procedure 12(b)(6). Analysis begins with standards governing Rule 12(b)(6) motions and then focuses on the facts specific to the three counts in question.

In deciding a motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6), the district court's task is to determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." **Khorrami v. Rolince, 539 F.3d 782, 788 (7th Cir. 2008), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).**

As the Court of Appeals for the Seventh Circuit has clarified: "Even after *Twombly*, courts must still approach motions under Rule 12(b)(6) by 'construing the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.'" **Hecker v. Deere & Co., 556 F.3d 575, 580 (7th Cir. 2009), cert. denied, 130 S. Ct. 1141 (2010), quoting Tamayo v. Blagoyevich, 526 F.3d 1074, 1081 (7th Cir. 2008).**

However, legal conclusions and conclusory allegations that merely recite the elements of a claim are not entitled to the presumption of truth afforded to well-pled

---

[2] By separate Order, the Court will rule on the other pending motion – Belsheim/Bruckert's May 12, 2012 motion to dismiss Counts 1, 2, and 3 of the complaint (Doc. 35).

facts.  **See, e.g., McCauley v. City of Chicago,** 671 F.3d 611, 616 (7th Cir. 2011). Therefore, after excising the allegations not accepted as true, the Court must decide whether the remaining factual allegations plausibly suggest entitlement to relief. **Id.** In other words, the complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief. **Id., citing Twombly**, 550 U.S. at 557. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." **McCauley**, 671 F.3d at 616, **citing Ashcroft v. Iqbal,** 556 U.S. 662, 663-64 (2009).

Also bearing note is that a Rule 12(b)(6) dismissal motion "must be decided solely on the face of the complaint and any attachments that accompanied its filing." **Miller v. Herman**, 600 F.3d 726, 733 (7th Cir. 2010), *citing* FED. R. CIV. P. 10(c) and **Segal v. Geisha NYC, LLC,** 517 F.3d 501, 504-05 (7th Cir. 2008). If, on a Rule 12(b)(6) motion, matters *outside* the pleadings are presented to (and not excluded by) the court, the motion must be treated as a Rule 56 motion for summary judgment. **General Insurance Co. of America v. Clark Mall Corp.**, 644 F.3d 375, 378 (7th Cir. 2011); FED. R. CIV. P. 12(d).

That means the court must notify the parties that it will consider the additional matters and provide a reasonable opportunity for the parties to present all materials pertinent to the motion, so construed. **Doss v. Clearwater Title Co.**, 551 F.3d 634, 639-40 (7th Cir. 2008). *See also* **Santana v. Cook County Bd. of Review,** -- F.3d --, 2012 WL 1608601, *2 (7th Cir. May 9, 2012). Of course, documents attached to the complaint are considered as part of the complaint itself. **See Arnett v. Webster**,

**658 F.3d 742, 746 (7th Cir. 2011)**. Bearing these standards in mind, the undersigned turns to ATG's motion to dismiss.

    C.    <u>Analysis</u>

        →    **THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT**

As bears on ATG's motion, the complaint alleges the following. Forest Lakes was developed through Caseyville Sport Choice, LLC (Caseyville) and promoted by John Nicholson and Craig Nicholson. In January 2007, Edelman, Furman and Jeffries (collectively, Plaintiffs) received a letter and offering memorandum from Caseyville, requesting a loan for Phase II of Forest Lakes. The letter and offering memorandum represented that the loan would be secured by a first lien mortgage. Plaintiffs (and non-party Nam Yung Suh) agreed to loan Caseyville $3,000,000 to finance Phase II of Forest Lakes, in exchange for a first lien mortgage on the property.

A Loan Agreement was executed by Plaintiffs, Suh, and Caseyville in March 2007. Belsheim/Bruckert represented Caseyville in connection with obtaining the financing from Plaintiffs. As part of that representation, Belsheim/Bruckert negotiated and drafted the Loan Agreement and Mortgage.[3] The Loan Agreement provided that the loan would be secured by a first lien mortgage on the development.[4]

---

[3] The complaint alleges (Doc. 21, p. 6): "Upon information and belief, Belsheim represented Caseyville in its development of Forest Lakes and the refinancing of Phase II, including its negotiation and execution of the Loan Agreement with Plaintiffs and Suh, the negotiation and execution of the Mortgage required by the Loan Agreement to be provided in favor of Plaintiffs and the closing of the loan transaction…." Additionally, the complaint alleges upon information and belief that the letter and offering memorandum were given to Belsheim/Bruckert, and the Mortgage was drafted by Belsheim/Bruckert (Id., p. 5 and p. 8).

[4] The mortgage, dated April 25, 2007, was executed by Terry Bruckert (as power of attorney for Caseyville) and was consistent with the terms of the Loan

In April 2007, Defendant Belco (as title agent) issued a title commitment in favor of Plaintiffs on the $3,000,000 loan to Caseyville, with ATG as the underwriter. The title commitment disclosed and expressly identified as a "Special Exception" an existing mortgage dated June 15, 2005, recorded June 16, 2005, executed by Caseyville, and given to Meridian Bank to secure a note in the amount of $20,000,000 (Complaint, p. 7). At that time, Plaintiffs did not see the title commitment (which clearly disclosed the prior mortgage on the property). The loan funds were disbursed to Caseyville.

Sometime in 2009, Plaintiffs were sued by Meridian Bank, who was attempting to foreclose *its* mortgage on the subject property. On December 21, 2009, Plaintiffs discovered that their loan was subordinate to the Meridian Bank loan. Meridian successfully foreclosed on the property, and Plaintiffs lost their investment.

The counts of the complaint directed against ATG (Counts 7, 8, 9) assert that ATG breached its fiduciary duty to each of the three Plaintiffs. Each of these counts alleges that (1) ATG was aware of Plaintiffs' expectation that they would get a first lien mortgage on the property, and (2) ATG breached its fiduciary duty to all three Plaintiffs by (a) failing to inform Plaintiffs about the existing mortgage in favor of Meridian Bank, (b) failing to provide closing documents to Plaintiffs prior to or immediately after the closing, (c) failing to contact Plaintiffs during the closing process, and (d) failing to seek instructions from Plaintiffs regarding the closing, "despite the fact that Belco admits that it was acting as an agent of Plaintiffs during closing" (Doc. 21, ¶¶ 90, 97, 104).

---

Agreement. The mortgage provided that it was a first lien mortgage on the subject property. The mortgage was record on May 7, 2007.

Each of these counts against ATG also alleges that ATG's conduct was outrageous "because of Attorneys' Title's evil motive and reckless indifference to the rights of others," entitling Plaintiffs to punitive damages (Doc. 21, ¶¶ 92, 99, 106).[5]

→   **ATG'S MOTION TO DISMISS COUNTS 7, 8, AND 9**

ATG moves to dismiss Counts 7 through 9 under Federal Rule of Civil Procedure 12(b)(6), contending that these counts fail to state a claim upon which relief can be granted. In the context of ATG's motion, the Court accepts as true all well-pleaded facts in the complaint and determines whether those allegations state a claim to relief that is facially plausible. **See Zemeckis v. Global Credit & Collection Corp, -- F.3d --, 2012 WL 1650479, *1 (7th Cir. May 11, 2012); Santana, 2012 WL 1608601, *5.** A claim survives Rule 12(b)(6) dismissal "when its factual allegations 'raise a right to relief about the speculative level.'" **Zemeckis at *1, quoting Twombly, 550 U.S. at 555-56.**

ATG maintains dismissal is warranted here, because ATG owes no fiduciary duty to Plaintiffs, so Plaintiffs' claims against ATG must fail as a matter of law. Under Illinois law, to establish a claim for breach of fiduciary duty, a plaintiff must prove: (1) a fiduciary duty on the part of the defendant; (2) a breach of that duty; (3) damages; and (4) a proximate cause between the breach and the damages. **Carter v. Carter, — N.E.2d --, 2012 WL 398934 (Ill. App. 2012).** Stated another way, "To recover for breach of a fiduciary duty, a plaintiff must prove that a fiduciary duty exists, that the fiduciary duty was breached, and that the breach proximately caused the injury of which

---

[5]   Punitive damages are available as a matter of law for a breach of fiduciary duty. **Tully v. McLean, 948 N.E.2d 714, 729 (Ill. App. 2011).**

the plaintiff complains." ***Tully v. McLean,* 948 N.E.2d 714, 739 (Ill. App. 2011),** ***quoting Crichton v. Golden Rule Ins. Co.,* 832 N.E.2d 843 (Ill. App. 2005).**

In the instant case, ATG's motion focuses on the first element – the existence of a fiduciary duty. A "fiduciary relationship exists where, by reason of friendship, agency, or business association and experience, trust and confidence are reposed by one party in another and the latter party gains an influence and superiority over the first as a result." ***Tully*, 948 N.E.2d at 739**. In Illinois, it is "well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law." ***Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011),** ***quoting Fichtel v. Board of Directors of River Shore of Naperville Condo. Ass'n,* 907 N.E.2d 903, 912 (Ill. App. 2009).**

As the United States Court of Appeals for the Seventh Circuit explained last year in ***Greenberger*, 631 F.3d at 401** (a case applying Illinois substantive law):

> A fiduciary duty may be created "where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former," … but the "mere fact that a contract of insurance … existed between the parties is insufficient to support a finding of a fiduciary relationship." ***Martin v. State Farm Mut. Ins. Co.,* … 808 N.E.2d 47, 52 ([Ill. App.] 2004)**….
>
> The plaintiff has the burden to plead with specificity and prove by clear and convincing evidence the existence of a fiduciary or special relationship. ***Martin,* … 808 N.E.2d at 52.**

The Court concluded: "[Plaintiff] has not satisfied this burden. Insurers ordinarily are not fiduciaries, and the facts and circumstances here do not suggest any basis for displacing this general rule." ***Greenberger,* 631 F.3d at 401.** ***Accord Crichton,* 576 F.3d at 397-98 (7th Cir. 2009),** ***citing Nielsen v. United Servs. Auto.***

***Ass'n,* 612 N.E.2d 526, 631 (Ill. 1993)("In Illinois, there is no fiduciary relationship between an insurance company and an insured.").**

Similarly, in ***Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 694 (7th Cir. 2008),** the Seventh Circuit reiterated that Illinois law is well established that no fiduciary relationship exists between an insurer and an insured, and the mere fact that two companies or individuals are parties to an insurance contract is insufficient to support a finding of a fiduciary relationship. Noting that the same principle governs *title* insurance, ATG seeks dismissal of Counts 7, 8, and 9, arguing that Plaintiffs have not and cannot satisfy their burden of pleading facts taking this case outside the ambit of the general rule that insurers ordinary owe no *fiduciary* duty to insureds.

Plaintiffs concede that there is no fiduciary duty between an insurer and an insured as a matter of Illinois law. They do not dispute that this principle applies equally to title insurers. But they contend that, nonetheless, they have stated a claim for breach of fiduciary duty by ATG, because their claims are *not based* on ATG's role as an insurer. Instead, say Plaintiffs, a fiduciary duty exists here based on (1) special circumstances of the parties' relationship, and (2) the fact that ATG acted as Plaintiffs' agent and Belco's principal. These arguments are unavailing.

As noted above, a fiduciary duty may be created where one party places its trust and confidence in another, putting the latter in a position of influence and superiority. ***See Martin,* 808 N.E.2d at 52.** This position of superiority may arise by reason of friendship, experience, or agency. ***Id., citing Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. App.1996).** Nevertheless, if the relationship between the parties is not a fiduciary one as a matter of law (for instance, insurer-insured), then the

party alleging a fiduciary duty (here, Plaintiffs) must plead, and ultimately, prove it by clear and convincing evidence.  *Fichtel,* **907 N.E.2d at 912.**  And "significant dominance and superiority [are] necessary to establish a fiduciary relationship."  *Id., quoting Martin*, **808 N.E.2d at 52.**

   Plaintiffs point out that the complaint clearly alleges that ATG owed Plaintiffs a fiduciary duty (see Doc. 39,p. 6, sub-¶ 5).  But the Court cannot accept as true *legal conclusions*, only well pled facts.  Accepting as true all well pled facts in Plaintiffs' complaint (and construing in Plaintiffs' favor all reasonable inferences from those facts), Plaintiffs have not alleged the significant dominance and superiority (arising from, for instance, a longstanding friendship, prior history of dealings, or "special confidence reposed" in another party, etc.) or any other special circumstances to show the existence of a fiduciary relationship between ATG and Plaintiffs.  The fact that ATG was aware of Plaintiffs' expectation that Plaintiffs would receive a first lien mortgage on the subject property is not enough to trigger a fiduciary duty owed by ATG to Plaintiffs.

   Plaintiffs' also argue that ATG can be held liable to Plaintiffs for breach of fiduciary duty because *Belco* enjoyed a position of superiority over Plaintiffs, *Belco* was bound to act in good faith, ATG "was the principal of Belco, and Belco was acting within the scope of such principal-agency relationship," and thus ATG (as principal) is liable for the tortious acts of Belco (as agent).  While it is delineated in the response brief on the dismissal motion, this theory of liability <u>against ATG</u> -- vicarious liability for Belco's acts as closing/escrow agent for Plaintiffs on the loan transaction – is not pled in the second amended complaint.

Nor can the Court conceive how Plaintiffs have a plausible claim against ATG via this theory of principal-agent vicarious tort liability, as the only claims directed at Belco are for breach of fiduciary duty, and (although the caselaw reflects some confusion exists on this point), the more modern view appears to be that breaches of fiduciary duty are governed by contract -- not tort -- law in Illinois.

> In more recent decisions, Illinois courts have … recognized that an action seeking damages for breach of fiduciary duty is an equitable action. **For example, in *Kinzer v. City of Chicago,* … 539 N.E.2d 1216 (1989), our supreme court expressly rejected the Restatement's view that an action for breach of fiduciary duty is a tort….**
>
> Instead, the supreme court regarded a claim for breach of fiduciary duty as controlled by the substantive law of agency, contract, and equity. ***Kinzer*, … 539 N.E.2d 1216.** Relying on ***Kinzer****,* reviewing courts have consistently characterized complaints for breach of fiduciary duty as equitable actions. [Citations omitted.]

***Bank One, N.A. v. Borse,*** **812 N.E.2d 1021, 1026 (Ill. App. 2004)(emphasis added). *See also Kling v. Landry,* 686 N.E.2d 33, 39 (Ill. App. 1997)("An action for the breach of fiduciary duty is not a tort; rather, it is governed by the substantive law of contracts.").**

To summarize, as a general rule, insurers (including title insurers, such as ATG) owe no fiduciary duty to insureds and cannot be held liable for breaching duties they do not owe. The exception to this rule is that special relationships may give rise to a fiduciary duty, where one party puts his trust and confidence in another, elevating the latter to a position of influence and superiority. Plaintiffs have invoked this exception but the complaint does not contain factual allegations of such a relationship.

On the Rule 12(b)(6) motion before it, taking as true all well-pled factual allegations and construing in Plaintiffs' favor all reasonable inferences therefrom, the Court finds that the complaint does not plead the requisite special circumstances to support the existence of a fiduciary duty owed by ATG to Plaintiffs. And even if the complaint can be read to allege that ATG is vicariously liable to Plaintiffs as Belco's principal, Plaintiffs have not cited (nor does the Court know of) Illinois caselaw permitting an action for the breach of fiduciary duty in these circumstances. The doctrine of *respondeat superior* allows the imposition of liability against a principal for the tortious conduct of its agent undertaken within the scope of the agency, but the breach of fiduciary duty is viewed as a contractual breach not a tortious act in Illinois.

The complaint contains abundant factual allegations, many of which outline the interwoven relationships between Belco (the title company that was Plaintiffs' closing/escrow agent on the transaction in question) and Belsheim/Bruckert (the law firm that represented Caseyville in the transaction and drafted the April 2007 mortgage which erroneously stated that it was a first lien mortgage on the property).[6] The complaint alleges that Belco issued the title commitment on the property, and ATG issued a title insurance policy consistent with the commitment.[7] The complaint alleges that Belco and ATG were well aware of Plaintiffs' expectation that they would get a first

---

[6] By way of example, the complaint pleads that the members of Belsheim/Bruckert are Harold G. Belsheim and Terry Bruckert; the members of Belco Title are Harold G. Belsheim and Terry Bruckert; and both Belco and Belsheim/Bruckert are located at 1002 E. Wesley Drive, Suite 100, O'Fallon, Illinois (Doc. 21, pp. 2-3). The complaint alleges that the agents, employees, and representatives of Belco were also the agents, employees, and representatives of Belsheim/Bruckert (Doc. 21, pp. 14-15, 16, 18).

[7] The complaint also alleges that the commitment expressly identified the prior (Meridian Bank) mortgage on the property (Doc. 21, p. 7), but Plaintiffs never saw or read the title commitment until December 2009 (Doc. 21, p. 9).

lien mortgage on the property. The complaint alleges that Plaintiffs' expectation was defeated, they did not get a first lien mortgage, and they lost their entire investment. The complaint does *not* state a facially plausible claim for **breach of fiduciary duty by ATG**, the underwriter/insurer in the transaction.

To recap, the facts alleged in the complaint establish no fiduciary duty owed by ATG to Plaintiffs. As the Illinois Supreme Court has held: "a title insurer is not in the business of supplying information when it issues a … policy of title insurance," and the "scope of a title insurer's liability is properly defined by contract." ***First Midwest Bank, N.A. v. Stewart Title Guar. Co.,* 843 N.E.2d 327, 336 (Ill. 2006).** Plaintiffs' remedy against ATG, if one exists, lies under the title policy.

D.  Conclusion

For all these reasons, the Court **GRANTS** ATG's motion to dismiss Counts 7, 8, and 9 of the complaint for failure to state a claim upon which relief can be granted (Doc. 27). Counts 7, 8, and 9 of the second amended complaint are **DISMISSED** with prejudice.

IT IS SO ORDERED.

DATED May 21, 2012.

s/ **Michael J. Reagan**
Michael J. Reagan
United States District Judge