IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN EDELMAN, ) | |
| C. BRADFORD JEFFRIES, Trustee of ) | |
| the C. Bradford Jeffries Living Trust, and ) | |
| WILL FURMAN, Trustee of the Furman- ) | |
| Doane Family Revocable Trust, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 11-cv-1121-MJR-PMF |
| ) | |
| BELSHEIM & BRUCKERT, LLC,  et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

REAGAN, District Judge:

    A.    <u>Introduction</u>

        As explained in the Court's May 21, 2012 Order herein (Doc. 46), this lawsuit involves the financing for a multi-use real estate development called Forest Lakes.  In the January 26, 2012 Second Amended Complaint, Plaintiffs -- one individual and two trusts, through their trustees -- asserted claims of negligent misrepresentation and breach of fiduciary duty against a law firm, a title company, and an insurer/underwriter.[1]  More specifically, Plaintiffs collectively loaned three million dollars to a non-party, Caseyville Sport Choice, LLC, in reliance on representations that the loan was secured by a first lien mortgage on a parcel of real property.

---

[1]    The three Plaintiffs are (1) Steven Edelman, (2) C. Bradford Jeffries, as Trustee of the C. Bradford Jeffries Living Trust dated September 19, 1994, and (3) Will Furman, as Trustee of the Furman-Doane Family Revocable Trust.  The three named Defendants were (1) Belsheim & Bruckert, LLC (the law firm, "Belsheim/Bruckert"), (2) Belco Title & Escrow, LLC ("Belco"), and (3) Attorneys' Title Guaranty Fund, Inc. ("ATG").

Only later did Plaintiffs discover that their mortgage on the property was subordinate to a $20,000,000 prior mortgage in favor of Meridian Bank. Meridian Bank foreclosed on the property, and Plaintiffs lost their investment. They sue in this United States District Court, seeking to recover their pecuniary losses plus interest, attorney's fees, and costs.

The Second Amended Complaint ("complaint") contained three negligent misrepresentation claims against Belsheim/Bruckert (Counts 1-3), three breach of fiduciary duty claims against Belco (Counts 4-6), and three breach of fiduciary duty claims against ATG (Counts 7-9). Belco answered the complaint (Doc. 37). Defendant ATG moved to dismiss the three claims against it, a motion which the Court granted on May 21, 2012 (Doc. 46).

On March 12, 2012, Defendant Belsheim/Bruckert moved to dismiss Counts 1, 2, and 3 (Doc. 35). Plaintiffs jointly opposed the motion on April 16, 2012 (Doc. 45), and the motion became ripe when the reply deadline (see Doc. 38) elapsed on May 3, 2012, without a reply brief being filed. Enjoying subject matter jurisdiction via the federal diversity statute, the Court now resolves Belsheim/Bruckert's dismissal motion.

B.    Applicable Legal Standards

Belsheim/Bruckert seeks dismissal of the three negligent misrepresentation claims against it (Counts 1, 2, and 3) under Federal Rule of Civil Procedure 12(b)(6). Analysis begins with standards governing Rule 12(b)(6) motions and then focuses on the facts specific to the three counts in question.

In deciding a motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6), the district court's task is to determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face."

***Khorrami v. Rolince***, 539 F.3d 782, 788 (7th Cir. 2008), ***quoting Bell Atlantic Corp. v. Twombly,*** 550 U.S. 544 (2007).

As the Court of Appeals for the Seventh Circuit has clarified: "Even after *Twombly*, courts must still approach motions under Rule 12(b)(6) by 'construing the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.'" ***Hecker v. Deere & Co.***, 556 F.3d 575, 580 (7th Cir. 2009), ***cert. denied,*** 130 S. Ct. 1141 (2010), ***quoting Tamayo v. Blagoyevich***, 526 F.3d 1074, 1081 (7th Cir. 2008).

However, legal conclusions and conclusory allegations that merely recite the elements of a claim are not entitled to the presumption of truth afforded to well-pled facts. ***See, e.g., McCauley v. City of Chicago,*** 671 F.3d 611, 616 (7th Cir. 2011). Therefore, after excising the allegations not accepted as true, the Court must decide whether the remaining factual allegations plausibly suggest entitlement to relief. ***Id.*** In other words, the complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief. ***Id., citing Twombly***, 550 U.S. at 557. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." ***McCauley***, 671 F.3d at 616, ***citing Ashcroft v. Iqbal,*** 556 U.S. 662, 663-64 (2009).

A Rule 12(b)(6) dismissal motion "must be decided solely on the face of the complaint and any attachments that accompanied its filing." ***Miller v. Herman***, 600 F.3d 726, 733 (7th Cir. 2010), ***citing*** FED. R. CIV. P. 10(c) and ***Segal v. Geisha NYC, LLC,*** 517 F.3d 501, 504-05 (7th Cir. 2008). ***Accord General Insurance Co. of America v. Clark Mall Corp.***, 644 F.3d 375, 378 (7th Cir. 2011); FED. R. CIV. P. 12(d).

Bearing these standards in mind, the undersigned turns to Belsheim/Bruckert's motion to dismiss.

C.     Analysis

→     **THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT**

Pertinent to Belsheim/Bruckert's motion, the complaint alleges the following. Forest Lakes was developed through Caseyville Sport Choice, LLC (Caseyville). John Nicholson and Glen Hierlmeier were co-managers of Caseyville. In January 2007, Caseyville sent a letter and offering memorandum to Plaintiffs, seeking a loan from Plaintiffs for Phase II of Forest Lakes. The letter and offering memorandum stated that the loan would be secured by a first lien mortgage on the property. After sending the letter and memo, Caseyville continued to represent to Plaintiffs that the loan would be secured by a first lien mortgage.

In reliance on those written and oral representations, Plaintiff executed a loan agreement by which they collectively loaned Caseyville $3,000,000. The Loan Agreement expressly provided that the Loan was to be secured by a first lien mortgage covering the property and any improvements. The Loan Agreement also provided that Plaintiffs (as lenders) must receive all loan documents, including the note and mortgage.

Belsheim/Bruckert (well aware that Plaintiffs expected their mortgage to be a first lien mortgage) represented Caseyville in the transaction, reviewing the loan agreement and drafting the mortgage with the "first lien" language.[2] Belsheim/Bruckert,

---

[2]     The complaint alleges: "Upon information and belief, Belsheim represented Caseyville in its development of Forest Lakes and the refinancing of Phase II, including its negotiation and execution of the Loan Agreement with Plaintiff, …, the negotiation and execute of the Mortgage required by the Loan

during the course of its business and for its own pecuniary gain, provided information to Plaintiffs that the mortgage was a first lien mortgage. Belsheim failed to exercise reasonable care in providing this information, which was intentionally provided for the guidance of Plaintiffs.

Belco was the escrow agent on the loan transaction. In April 2007, ATG, through Belco, issued a title commitment agreeing to issue a loan policy in favor of Plaintiffs on the $3,000,000 loan.[3] The loan funds were disbursed to Caseyville. Plaintiffs did not receive any of the loan or closing documents from Caseyville or Belsheim/Bruckert, other than the mortgage.

The mortgage was recorded May 7, 2007. Two years later, Plaintiffs were sued by Meridian Bank who claimed to have a *prior* mortgage on the same property. In December 2009, Plaintiffs learned that their loan indeed was subordinate to the Meridian Bank loan. Meridian Bank foreclosed on the property, and Plaintiffs lost their entire investment.

### → BELSHEIM/BRUCKERT'S MOTION TO DISMISS

Belsheim/Bruckert moves to dismiss Counts 1 through 3 under Federal Rule of Civil Procedure 12(b)(6), contending that these counts fail to state a claim upon which relief can be granted. In the context of this motion, the Court accepts as true all well-pleaded facts in the complaint and determines whether those allegations state a

---

Agreement to be provided in favor of Plaintiffs and the closing of the loan transaction" (Complaint, Doc. 21, ¶ 25). The complaint also alleges on information and belief that the letter and offering memorandum were given by John Nicholson to Belsheim/Bruckert (complaint, Doc. 21, ¶ 16).

[3] The title commitment plainly identified an earlier mortgage (dated June 15, 2005 and recorded June 16, 2005) executed by Caseyville and given to Meridian Bank to secure a $20,000,000 note (Doc. 21, ¶ 27).

claim to relief that is facially plausible.  ***See Zemeckis v. Global Credit & Collection Corp*, -- F.3d --, 2012 WL 1650479, \*1 (7th Cir. May 11, 2012); *Santana*, 2012 WL 1608601, \*5.**  A claim survives Rule 12(b)(6) dismissal "when its factual allegations 'raise a right to relief about the speculative level.'"  ***Zemeckis* at \*1, *quoting Twombly*, 550 U.S. at 555-56.**

Belsheim/Bruckert urges dismissal of the claims against it on two grounds: (1) the economic loss doctrine bars Plaintiffs from seeking damages under a theory of negligent misrepresentation herein, and (2) Plaintiffs cannot establish justifiable reliance to support a negligent misrepresentation claim.  The Court addresses these arguments in turn.

Known as the *Moorman* doctrine in Illinois, the economic loss doctrine "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations."  ***Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 567 (7th Cir. 2012), *citing Moorman Manufacturing Co. v. Nat'l Tank Co.,* 435 N.E.2d 443, 448-49 (Ill. 1982).**

In ***Moorman,*** the Illinois Supreme Court held that contract law protects contracting parties' expectations and provides the proper remedy, so a contracting party may not recover for solely economic loss under tort theories of strict liability, negligence, and innocent misrepresentation.  ***Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011).**  So, for instance, the *Moorman* doctrine precludes liability for a defendant that negligently hires or supervises an employee who, in the course of performing a contract between a plaintiff and a defendant, causes the plaintiff to suffer purely economic harm.  ***Wigod,* 673 F.3d at 567.**   Likewise, if an architect bungles a

construction design, the *Moorman* doctrine bars the aggrieved owner's negligence claim. "The shoddy workmanship is a breach of the design contract rather than a failure to observe some independent duty of care owed to the world at large." *Id.* **at 568.**[4]

Illinois law recognizes several exceptions to the *Moorman* doctrine, each of which is grounded in the general rule that where a duty arises *outside of the contract,* the economic loss doctrine does not prohibit recovery in tort for a negligent breach of that duty. *Wigod,* **673 F.3d at 567.** "To determine whether the *Moorman* doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Id., citing Catalan,* **629 F.3d at 693 ("These exceptions have in common the existence of an extra-contractual duty between the parties, giving rise to a cause of action in tort separate from one based on the contract itself.").**

The Illinois Supreme Court has summarized the three exceptions to the doctrine as follows: (1) where the plaintiff sustained personal injury or property damage resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation (*i.e.,* fraud); and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation made by a defendant in the business of supplying information to guide others in their business transactions. *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.,* **843 N.E.2d 327, 333-34 (Ill. 2006).**

---

[4]     A mortgage contract *itself* cannot create an extra-contractual duty without some showing of a fiduciary relationship between the parties. *Catalan,* **529 F.3d at 693.**

In the case at bar, Plaintiffs invoke the third exception – negligent misrepresentation – to avoid application of the *Moorman* doctrine. "The Illinois Supreme Court allows suits alleging negligent misrepresentation 'where [the defendant] is in the business of supplying information for the guidance of others in their business transactions.'" ***Kemper/Prime Indus. Partners v. Montgomery Watson Americas, Inc.,*** **487 F.3d 1061, 1063-64,** ***citing Brogan v. Mitchell Int'l,*** **692 N.E.2d 276, 278 (Ill. 1998), and** ***Moorman,*** **435 N.E.2d at 452.** To state a claim for negligent misrepresentation under Illinois law, the plaintiff must allege: (a) a false statement of material fact; (b) carelessness or negligence in ascertaining the truth of the statement by the party making the statement; (c) an intention to induce the other party to act; (d) action by the other party in reliance on the truth of the statement; (e) damage to the other party resulting from such reliance; and (f) a duty on the party making the statement to communicate accurate information. ***Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP,*** **475 F.3d 824, 833-34 (7th Cir. 2007),** ***citing First Midwest,*** **843 N.E.2d at 334-35.** ***See also Kemper,*** **487 F.3d at 1064.**

In the case sub judice, Belsheim/Bruckert acknowledges that negligent misrepresentation constitutes an exception to the *Moorman* doctrine under Illinois law. Belsheim/Bruckert maintains, however, that Plaintiffs' negligent misrepresentation claims against Belsheim/Bruckert must fail, because Belsheim/Bruckert represented *Caseyville* (not Plaintiffs) in the loan transaction, and attorneys "do not become guarantors for the performance of their clients' contractual obligations simply because they … draw up the papers containing those obligations" (Doc. 36, pp. 4-5).

Plaintiffs respond that the negligent misrepresentation exception to the *Moorman* doctrine is not confined to parties in privity. Plaintiffs point out that in ***Rozny v. Marnul,* 250 N.E.2d 656, 660 (Ill. 1969),** the Illinois Supreme Court formally abandoned the concept of privity of contract in actions for negligent misrepresentation (Doc. 45, p. 10), and thus a defendant (like a lawyer) in the business of supplying information may owe a duty to a plaintiff, even if the plaintiff is not the defendant's own client.

Plaintiffs have the better argument on this point, but it does not get them all the way home. The Illinois courts have clearly held that "a defendant in the business of supplying information may owe a duty to a plaintiff despite the fact that the plaintiff was not the defendant's client," and "tort liability is to be measured 'by the scope of the duty owed rather than the artificial concepts of privity.'" ***Kelley v. Carbone,* 837 N.E.2d 438, 441 (Ill. App. 2005).** However, liability is limited to the persons for whose benefit and guidance the information is intended. So, to plead a cause of action for negligent misrepresentation against a provider of information employed by a third party, the plaintiff must allege that the purpose and intent of the relationship was to benefit of influence the plaintiff. ***Id., citing Pelham v. Griesheimer,* 440 N.E.2d 96 (Ill. 1982), and *Brumley v. Touche, Ross & Co.,* 487 N.E.2d 641 (Ill. App. 1985).**

Thus, the fact that Belsheim/Bruckert was retained by Caseyville rather than Plaintiffs does not defeat Plaintiffs' negligent misrepresentation claims. Lawyers, as information and guidance providers, can be held liable to third parties. But the complaint must allege that the lawyers were acting at the direction of, or on behalf of, the client to benefit or influence the third party. Plaintiffs' complaint does not allege that

Belsheim/Bruckert was retained by Caseyville or acting at the direction of Caseyville to benefit or influence Plaintiffs.

Yes, the complaint alleges that Belsheim/Bruckert drafted the mortgage for Caseyville, but the allegations stop short of alleging a purpose or intent to benefit or influence Plaintiffs. Plaintiffs argue in response to the dismissal motion that the mortgage "undoubtedly" was drafted to benefit or influence them in the loan transaction (Doc. 45, p. 12), but the Court cannot assume that, and it is not necessarily a reasonable inference from the well-pled facts. Some allegation about Belsheim/Bruckert's purpose or intent is needed to support the existence of a duty from Belsheim/Bruckert to Plaintiffs in this information-provision context, and duty is essential to any negligent misrepresentation claim Plaintiffs have against Belsheim/Bruckert. ***See, e.g., Rojas Concrete, Inc. v. Flood Testing Laboratories, Inc.,* 941 N.E.2d 940, 943 (Ill. App. 2010)("To state a claim for negligent misrepresentation, a plaintiff must plead … that the defendant owed a duty to the plaintiff to communicate accurate information."); *Board of Educ. vs. A, C, and S, Inc.,* 546 N.E.2d 580, 591 (Ill. 1989)(one of the elements of a negligent misrepresentation claims in Illinois is "that the defendant owes a duty to the plaintiff to communicate accurate information").**

So the negligent misrepresentation allegations come up just short. However, the Court rejects Belsheim/Bruckert's suggestion that the negligent misrepresentation claims must be dismissed *with* prejudice at this time (Doc. 36, p. 5). The Court will allow Plaintiffs an opportunity to replead Counts 1 through 3.

As a second basis urged for dismissal of these counts, Belsheim/Bruckert asserts that Plaintiffs have pled themselves out of court on Counts 1, 2, and 3 by alleging facts which undermine this theory of liability. As noted above, Plaintiffs allege that Belsheim/Bruckert repeatedly misrepresented to Plaintiffs that they were receiving a first lien mortgage on the property, that Belsheim/Bruckert failed to exercise reasonable care in providing information regarding the true nature of the mortgage, that Plaintiffs justifiably relied on that information in investing in Phase II, and as a direct cause of that reliance, suffered pecuniary loss.

Belsheim/Bruckert insists that dismissal is warranted because the earlier Meridian Bank mortgage was recorded,[5] so Plaintiffs had constructive knowledge of a substantial encumbrance having priority over Plaintiffs' mortgage, and thus they could not have *justifiably* relied on Belsheim/Bruckert's representations. "Plaintiffs cannot claim that they justifiably and reasonably relied on Belsheim when they knew, as a matter of law, that the property was already subject to a first lien mortgage" (Doc. 36, p. 6). Thus, argues Belsheim/Bruckert, Counts 1 through 3 should be dismissed with prejudice.

This argument has first-blush appeal but on closer consideration leaves the Court unpersuaded. Defense counsel did not cite a case which lists *justifiable* reliance as an element of a negligent misrepresentation claim, but the Court's independent research confirms justifiable reliance is needed. Defense counsel cite only *Prime Leasing, Inc. v. Kendig,* **773 N.E.2d 84, 92 (Ill. App. 2002),** for this proposition,

---

[5]    The complaint alleges that the title commitment issued in conjunction with the closing identified the existence of the Meridian Bank mortgage "recorded June 16, 2005" (Second Amended Complaint, Doc. 21, ¶ 27).

but **Prime Leasing** recites the elements of an Illinois law negligent misrepresentation claim in a way that does not mention *justifiable* reliance. Instead, the discussion of justifiable reliance arises in the context of the plaintiffs' *fraud* claim and is mentioned briefly in connection with reference to Section 311 of the Restatement (Second) of Torts (1965). ***Id.***

Similarly, in **Wigood, 673 F.3d at 569,** the discussion of reasonable reliance occurs in conjunction with the *fraudulent* misrepresentation claim. And in **Tricontinental, 475 F.3d at 842,** justifiable reliance is listed as an element of a private cause of action for securities fraud under Rule 10b-5, not as an element of negligent misrepresentation ("In order to state a claim for negligent misrepresentation under Illinois law, a party must allege: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.").

But in **Kopley Group V. L.P. v. Sheridan Edgewater Properties, Ltd., 876 N.E2d 218, 228 (Ill. App. 2007),** the Illinois Court of Appeals declared: "In any event, in both negligent and fraudulent misrepresentation cases, the reliance by the plaintiff must be justified…." ***See also Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor,* 692 N.E.2d 812, 818 (Ill. 1998)("no recovery for fraudulent misrepresentation, fraudulent concealment or negligent misrepresentation is possible unless plaintiffs can prove justifiable reliance, *i.e., that any reliance was reasonable.")** So, by alleging in paragraph 27 of the complaint

in the instant case that the Meridian Bank mortgage was recorded, have Plaintiffs defeated their negligent misrepresentation claims?  In the context of the motion before the Court, accepting as true all well-pled facts and reasonable inferences therefrom (and prohibited from looking outside the pleadings, as it could on a summary judgment motion), the Court concludes not.

This is a close call, however, and it appears that Plaintiffs face an uphill trek for these claims to survive further dispositive motions.  Illinois caselaw holds that in determining whether plaintiffs justifiably relied on a misrepresentation, "it is necessary to consider all of the facts within a plaintiff's actual knowledge as well as those that he could have discovered by the exercise of ordinary prudence."  *Kopley,* **876 N.E.2d at 229,** *quoting Neptuno,* **692 N.E.2d at 818.**

Furthermore, a person "may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another;" and if "ample opportunity existed to discover the truth, then reliance is not justified."  *Id.* At this point, on the Rule 12(b)(6) motion currently before it, the Court is dismissing Counts 1 through 3 without prejudice (on the grounds outlined above) and permitting amendment of the complaint.

D.    <u>Conclusion</u>

The Court **GRANTS in part and DENIES in part** Belsheim/Bruckert's motion to dismiss Counts 1 through 3 for failure to state a claim upon which relief can be granted (Doc. 35).   The motion is **granted** in that the Court will dismiss Counts 1 through 3, but the motion is **denied** in that the dismissal shall be without prejudice and

Plaintiffs shall be permitted one more amendment of their complaint. Plaintiffs shall file their **Third Amended Complaint** by **June 29, 2012.**

IT IS SO ORDERED.

DATED May 29, 2012.

s/ Michael J. Reagan
Michael J. Reagan
United States District Judge