IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **STEVEN EDELMAN, C. BRADFORD JEFFRIES,** *Trustee of the C. Bradford Jeffries Living Trust dated September 18, 1994*, and **WILL FURMAN,** *Trustee of the Furman-Doane Family Revocable Trust*, <br><br> Plaintiffs, <br><br> v. <br><br> **BELCO TITLE & ESCROW, L.L.C.,** <br><br> Defendant. | Case No. 3:11-cv-1121-DGW |

### ORDER

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendant, Belco Title & Escrow, L.L.C., on March 21, 2013 (Doc. 80). For the reasons set forth below, the Motion is **GRANTED**.

#### INTRODUCTION

Plaintiffs' Fourth Amended Complaint, which was filed on June 15, 2012 (Doc. 52), makes various allegations related to a losing commercial venture wherein Plaintiffs lost a collective $2,500,000.00. To recoup their lost funds, Plaintiffs originally sued a law firm, a title company, and an underwriter related to the transaction under theories of negligent misrepresentation and breach of fiduciary duties. The underwriter (Attorneys' Title Guaranty Fund, Inc. ("ATG")) was dismissed by order on May 21, 2012 (Doc. 46) and the law firm (Belsheim & Bruckert, L.L.C.) was dismissed by stipulation on April 23, 2013 (Doc. 83) – only the title company (Belco Title & Escrow, LLC) and the related claims of breach of fiduciary duty remain (Counts 4-6 of the Fourth

Amended Complaint).[1]

## BACKGROUND

Forest Lakes was, as we shall see, a failed multi-use development project developed by Caseyville Sport Choice, LLC and promoted by John and Craig Nicholson. On June 15, 2005, Caseyville executed a duly recorded $20 million mortgage that was secured by a lien, in favor of Meridian Bank, on the residential portion of Forest Lakes. In 2007, Caseyville solicited Plaintiffs and another investor, Nam Yung Suh, who collectively invested $3,000,000 for Phase II of the project (which appears to involve only the residential portion of Forest Lakes).[2] Plaintiffs understood, through representations made by Caseyville and a written Loan Agreement (Doc. 81-1, pp. 32-45),[3] that their loans would be secured by a first lien on the Phase II property. Unfortunately for Plaintiffs, the residential portion of Forest Lakes was foreclosed upon by Meridian Bank, which in fact had the first lien, at some point after September, 2009. Plaintiffs lost all their money: this lawsuit was filed thereafter on December 21, 2011.

Defendant Belco Title & Escrow relationship to the transactions, Plaintiffs, other third party actors, and dismissed Defendants all appears to be in a tangled web that need not be unraveled by this Court. Suffice it to say, Belco Title was created by the firm Belsheim &

---

[1] Belco Title & Escrow did not file a timely Answer to the Fourth Amended Complaint. By an Order Dated May 13, 2013, it was granted until May 16, 2013 to file its Answer (Doc. 92).

[2] Plaintiffs Edelman and Furman (as trustee) did not just write a check in their respective amounts. It appears that they had already turned over the funds to Caseyville and/or the Nicholson brothers (or another entity controlled by the Nicholson brothers) in relation of another aspect of the Forest Lakes project in 2004. These funds were then applied to the agreements at the heart of this case. Plaintiff Jeffries (as trustee) wired his investment amount, $1,400,000 to Caseyville in February, 2007 (prior to signing the Loan Agreement).

[3] The Loan Agreement was signed by Edelman, Jeffries, and Furman by March 1, 2007 (Doc. 81-1, p. 41).

Bruckert in furtherance of the firm's work with Caseyville Sport Choice.  The two persons who performed work for Belco were Doug Gruneke and Angela Kalous, an attorney and paralegal, respectively, formally employed by Belsheim & Bruckert.  Belsheim & Bruckert represented Caseyville in its agreement with Meridian Bank and Belco was the closing agent on that mortgage. Belco used ATG in previous transactions, and in the transaction involving Plaintiffs, to do title search work and prepare title commitment documents to be used in closings.

With respect to the transaction involving the Plaintiffs, Belco issued a "Commitment for Title Insurance" (hereinafter "Title Commitment" (Doc. 81-10)) in relation to the loan agreement entered into by Plaintiffs and Caseyville prior to closing and acted as the closing agent/escrow agent on the mortgage at issue.  There is no question that the documents related to the mortgage, including the Title Commitment, were accurate in that they indicated that Meridian Bank held the first lien on the property.   There is also no question that Belco performed its nominal duties as an escrow agent in that it made disbursements of funds in accordance with an Agency/Escrow Disbursement Agreement (Doc. 81-1, pp. 46-47).[4]

Plaintiffs' gripe with Belco is that it failed to inform them of anything related to the transaction notwithstanding its knowledge of Plaintiffs' expectations and the terms of the Loan Agreement.   Namely, Plaintiffs state that Belco failed to:

   1.   Seek instruction from them with respect to closing;
   2.   Notify them as to the closing date;
   3.   Seek Plaintiffs' opinion as to the accuracy of the closing documents; and
   4.  Provide Plaintiffs with the documents related to closing (either before or shortly after closing) including the Mortgage, Title Commitment, or HUD

---

[4] This agreement states, in pertinent part, the Belco "is acting only as an agent of the lending institution, and does not represent either the Seller or the Buyer/Borrower as an attorney or in any other way" (Doc. 81-1, p. 46).   "Lending institution" refers to the Plaintiffs.

statements.

Plaintiffs' main issue with Belco is that it failed to inform them prior to closing that they would not have first lien priority on the property (Phase II) used to secure the mortgage and/or that it failed to provide them with a copy of the Title Commitment that indicated Meridian's superior mortgage. Plaintiffs state that they did not receive a copy of the Title Commitment until 2009, two years after the April 25, 2007 closing.

## STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d

4

1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## DISCUSSION

The parties seem to agree that Belco owed Plaintiffs a fiduciary duty as the escrow/closing agent on the mortgage. In order to prevail on a claim of breach of this duty, Plaintiffs must show that: "a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains." *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000); *Sklodowski v. Country wide Home Loans, Inc.*, 832 N.E.2d 189, 197-198 (Ill. App. Ct. 2005). Attorney-client and principal-agent relationships are the types of relationships that give rise to fiduciary duties as a matter of law. *Miller v. Harris*, 985 N.E.2d 671, 679 (Ill. App. Ct. 2013). "A fiduciary relationship [also] exists where one party reposes trust and confidence in another, who thereby gains a resulting influence and a superiority over the subservient party. This is generally accomplished by establishing facts showing an antecedent relationship that give rise to trust and confidence reposed in another." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1040-1041 (Ill. 2012). Generally, an agent owes his principal a duty of "candor, rectitude, care, loyalty, and good faith – in fact to treat the principal as well as the agent would treat himself." *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992).

In the context of an escrow agent's duty to a lender, "an escrowee, like a trustee, owes a fiduciary duty to act only according to the terms of the escrow instructions, and that an escrowee may become the trustee of both the party making the deposit and the one for whose benefit it is made." *Bescor, Inc. v. Chicago Title & Trust Co.*, 446 N.E.2d 1209, 1213 (Ill. App. Ct. 1983); *International Capital Corp. v. Moyer*, 806 N.E.2d 1166, 1172 (Ill. App. Ct. 2004); *Toro Petroleum*

*Corp. v. Newell*, 338 N.E.2d 491, 495 (Ill. App. Ct. 1974); *See also TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*, 153 F.3d 822, 829 (7th Cir. 1998).  There is no question here that Belco complied with the terms of the escrow agreement in that the funds were disbursed according to the agreement.  There is also no question that the documents related to the mortgage were accurate in that they disclosed the first lien mortgage held by Meridian Bank.  Does Belco, then, owe any additional duties, namely a duty to inform Plaintiffs of the closing and to warn Plaintiffs of potential fraud (i.e. the contradiction between the Loan Agreement and the Title Commitment).

Plaintiffs state that Belco owed the general duties that a principal owes to its agent, namely loyalty and full disclosure.   In particular, Plaintiffs state that Belco was "the agent of Plaintiffs for purposes of the closing of the Loan Agreement Transaction."   As far as the Court can tell, the Loan Agreement was between Caseyville and Plaintiffs and did not include Belco (as a closing agent or otherwise).  Plaintiff has cited no provision of the Loan Agreement that would make Belco an agent of Plaintiffs with respect to that agreement.  There is no showing that any of the monies given by Plaintiffs to Caseyville in conjunction with the Loan Agreement were placed in an escrow account by Belco.  Belco was, however, the escrow agent with respect to the mortgage agreement and was a party to the Agency/Escrow Disbursement Agreement.  The parties appear to the agree that the only monies escrowed were the "settlement costs" associated with closing on the mortgage – and while there is a dispute as to who exactly fronted the settlement costs, it is clear that Plaintiffs did not provide these monies to Belco.  To the extent that Plaintiffs maintain that Belco was their agent with respect to the Loan Agreement, such a claim is not supported by the record, or, at the very least, is not convincingly established by Plaintiffs.

Plaintiffs also argue that Belco failed to comply with "closing instructions" and thereby

6

breached its duties as a closing agent. Plaintiffs' brief, however, is devoid of any citation to any piece of evidence in this case (namely a contract) that would have required Belco to perform the acts Plaintiff highlights (to wit, "forwarding closing documents and the Title Commitment to the parties," etc.). That is, Plaintiffs refer to "escrow/closing instructions" but does not point out to the Court where these specific instructions are located in the record or in what manner Belco failed to comply with these instructions. At most, Plaintiff argues that Belco failed to communicate with Plaintiffs regarding the closing. While the Court acknowledges that there was a great deal of irregularities with respect to this transaction, Plaintiffs have not convinced this Court that Belco is responsible for their loss. The Court does not turn a blind eye to the fact that Plaintiffs in this action turned over significant funds to Caseyville on a promise that did not pan out – that promise, however, was not made or breached by Belco.

In *Home Loan Center, Inc. v. Flanagan*, an unreported case from the Northern District of Illinois, District Judge Matthew F. Kennelly found that Illinois Courts would impose a duty on escrow agents to notify "parties to the escrow of potential fraud." *Id.*, 2012 WL 1108132, \*5 (N.D.Ill. 2012). In that case, a law firm acted as the closing agent and escrow agent and was tasked in the escrow instructions to ensure the identity of the borrower. It turned out that the borrower had stolen another person's identity and that the escrow agent failed to appropriately verify the identity of the borrower. The Court held that even though no Illinois Court had made a finding as to the general duties of an escrow agent, the escrow agent "owes a duty to the parties to the escrow to exercise reasonable care in supervising the closing, verifying the identity of the borrower and notifying the parties to the escrow of potential fraud, and disbursing funds appropriately." *Id.*; *but see Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F.Supp.2d 978,

991 (N.D.Ill. 2010) (stating that "any" duty owed by a closing/escrow agent "must derive from the closing instructions, and not generally from law and industry standards").  Without citing to authority, Judge Kennelly also found that "[t]he fact that an escrow agent must follow the closing instructions, however, does not preclude the existence of duties derived from other sources." *Home Loan Center, Inc.*, 2012 WL 1108132 at *6.   Notably, however, the duty that was breached in the above case flowed from specific language in the escrow instructions.

This Court does not find *Home Loan Center, Inc.*, dispositive in this case in light of the other authority cited above which tie the fiduciary duty owed by an escrow/closing agent to the actual instrument directing the actions of the agent.   This principal is illustrated in a case cited by Plaintiffs, *International Capital Corp. v. Moyer*.  In that case, the potential buyer of property placed earnest money in escrow with an agent; when closing did not occur as scheduled, the agent disbursed the money to the seller in spite of the lack of instructions regarding the disbursement of the funds.  *Id.* 806 N.E.2d at 1172.  The Court stated that "the operation of the escrow was to be governed by the contract" and because the contract was silent on the issue of disbursement and the escrow agent had received conflicting instructions from the seller and the buyer, the escrow agent should not have given the funds to the seller because of a provision in the agreement that the escrow agent "was required to hold the funds for the 'mutual benefit of the parties.'"  *Id.* at 1172.  The breach of fiduciary duty was tied to a provision in the escrow agreement -- "for the mutual benefit of the parties" -- and the conflicting instructions given by the parties to the failed transaction.

In the case at bar, Plaintiff points to no provision in the Agency/Escrow Disbursement Agreement that mandated the categories of duties that Plaintiff highlights, all of which are related

to communication between Belco and Plaintiffs.  Unlike each of the cases above, Plaintiffs attempt to impose duties that are not present in any agreement and that are not a reasonable extension of the provisions of any agreement.  While Belco was acting as Plaintiffs' agent with respect to the mortgage, there is no evidence that it shirked any of it duties.  For these reasons, Plaintiffs claims against Belco must fail as a matter of law.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendant, Belco Title & Escrow, L.L.C., on March 21, 2013 (Doc. 80) is **GRANTED**.   The Clerk is directed to enter judgment in favor of Belco Title & Escrow, L.L.C. and against Plaintiffs.   Case terminated.

**IT IS SO ORDERED.**

**DATED: May 16, 2013**

**DONALD G. WILKERSON**
**United States Magistrate Judge**

9